UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENDA ALSTON,<br>4129 Urn St.<br>Capitol Heights, MD 20743<br><br>   Plaintiff,<br><br>v.<br><br>DANIEL P. DRISCOLL,<br>SECRETARY OF THE ARMY,<br>DEPARTMENT OF THE ARMY,<br>101 Army Pentagon<br>Washington DC 20310-1500<br><br>   Defendant(s).<br><br><br>Serve:<br><br>U.S. Attorney<br>Jeanine F. Pirro<br>601 D Street, NW<br>Washington DC 20579<br><br>U.S. Attorney General<br>Pam Bondi<br>U.S. Department of Justice<br>950 Pennsylvania Ave., NW<br>Washington DC 20530 | Case No.:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

  COMES NOW, Plaintiff, Brenda Alston, by and through undersigned counsel, and submits this Complaint against Defendant, Daniel P. Driscoll, Secretary of the Army, and the Department of the Army, under Title VII of the Civil Rights Act of 1964, the Age Discrimination in

1

Employment Act of 1967, and all applicable federal statutes prohibiting discrimination, harassment, and retaliation in federal employment.

## INTRODUCTION

1. This is an action authorized and instituted pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 (as amended), *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), 28 U.S.C. § 1367, and the Constitution of the United States, for the Defendants' unlawful discrimination, harassment, and hostile work environment based on his perceived mental health disability, as well as constitutional violations pursuant to the Fourth Amendment of the Constitution, and defamation.

## JURISDICITON AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 2000e 5(f)(3) (Title VII of the Civil Rights Act of 1964), 29 U.S.C. § 633a (Age Discrimination in Employment Act), and all other applicable federal statutes prohibiting discrimination, harassment, and retaliation in federal employment.

3. Jurisdiction is further conferred by 28 U.S.C. § 1331, as this action arises under the laws of the United States, and by 29 C.F.R. Part 1614, which governs federal sector equal employment opportunity complaints.

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

5. Venue is proper in the District of Columbia Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because Defendant transacts substantial business in this District, Defendants principal places of business are in this District, and Defendant maintain employment records related to this action in the District of Columbia.

## **PROCEDURAL HISTORY**

6. Plaintiff has exhausted all of her administrative remedies.

7. Plaintiff began her career as a Budget Analyst at MIRC in October 2018. During her tenure, she was the only Black, female, senior civilian employee in her section.

8. Plaintiff engaged in protected EEO activity, including reporting discriminatory conduct directed at other employees on May 25, 2022, and participating as a witness in EEO investigations concerning colleagues Isaac Ebron and David Harris III.

9. On November 10, 2022, Plaintiff filed a formal complaint of discrimination with the Agency EEO office, which issued a partial notice of acceptance.

10. Plaintiff amended her complaint on March 29, 2023, and the Agency EEO issued an Amended Notice of Partial Acceptance on March 30, 2023.

11. Plaintiff's complaint alleged discrimination, harassment, and retaliation based on race, color, sex, age, and prior protected activity.

12. Throughout 2022 and 2023, Ms. Alston was subjected to a series of adverse actions, including exclusion from group lunches and events, being spoken to in Spanish by supervisors and colleagues, written counseling, investigations, and ultimately a 14-day suspension effective April 9, 2023.

13. The Agency filed a Motion for Decision Without a Hearing. Plaintiff filed an opposition, arguing that genuine issues of material fact existed and that comparator evidence supported her claims of disparate treatment and pretext.

14. On June 5, 2025, the Administrative Judge issued a Decision and Order Entering Judgment for the Agency, finding no genuine issue of material fact and rejecting the comparator

evidence as insufficiently specific regarding roles, titles, supervisors, and the nature of preferential treatment.

15. On July 14, 2024, the Final Agency Action was issued advising Complainant that she had ninety (90) calendar days to file a lawsuit.

## PARTIES

16. Ms. Brenda Alston ("Ms. Alston," "Plaintiff") is a Black, female employee born in 1966, who served as a GS-12 Budget Analyst for the Military Intelligence Readiness Command (MIRC), United States Army Reserve, at Fort Belvoir, Virginia. Ms. Alston resides at 4129 Urn St., Capitol Heights, MD 20743.

17. Defendant is the Department of the Army, acting through its officials and agents. Defendant's principal place of business is located at 101 Army Pentagon, Washington DC 20310-1500.

## FACTUAL ALLEGATIONS

18. Ms. Alston, a Black, female GS-12 Budget Analyst born in 1966, was employed by the Military Intelligence Readiness Command ("MIRC") at Fort Belvoir, Virginia. Throughout her tenure, she was the only Black, female, senior civilian employee in her section, and was supervised by Jeovanie Claudio (First-Line Supervisor, Hispanic, male, born 1984), Lieutenant Colonel Jaime Soto (Second-Line Supervisor until April 21, 2023, Hispanic, male, born 1972), and Captain David Ha (Second-Line Supervisor after April 21, 2023, Asian, male, born 1993).

19. Beginning on or about May 25, 2022, Ms. Alston was routinely excluded from group lunches and events organized by her supervisors and colleagues, including Mr. Claudio, LTC Soto, LTC Ortega, and CPT Christopher Kreft (White, male, born 1987). These individuals

frequently spoke Spanish in Ms. Alston's presence, despite her being a non-Spanish speaker, which created a language barrier and contributed to her isolation within the workplace. The exclusion was consistent and ongoing, and Ms. Alston observed that Hispanic, Spanish-speaking employees, particularly Staff Sergeant Cecilia Vicil-Deynes (Hispanic, female, born 1993), were included and favored in these social interactions.

20. On August 12, 2022, Ms. Alston was involved in an altercation with SSG Vicil-Deynes, who stated, "I was always taught to respect my elders but not anymore, because I do not like your tone." This comment was witnessed by Marie Abernethy, who described it as disrespectful and ageist. Despite a subsequent meeting on August 16, 2022, where Ms. Alston apologized and the parties agreed to move on, SSG Vicil-Deynes escalated the matter by filing an EEO complaint against Ms. Alston.

21. On August 17, 2022, Mr. Claudio issued Ms. Alston a written counseling for her interaction with SSG Vicil-Deynes, citing inappropriate and unprofessional conduct. In contrast, SSG Vicil-Deynes received only a verbal warning for her age-related comments, despite the incident being witnessed and reported as harassing by Ms. Abernethy. This disparity in discipline demonstrates preferential treatment for SSG Vicil-Deynes, who is Hispanic, female, and more than 20 years younger than Ms. Alston, and was favored by the same supervisors.

22. Between August 26 and August 30, 2022, CPT Kreft, acting as an investigative officer, contacted Ms. Alston regarding allegations of harassment made by SSG Vicil-Deynes. During the interview, CPT Kreft was rude and dismissive, and Ms. Alston felt ambushed and unfairly targeted. Ms. Alston immediately raised concerns to COL Edward Van Giezen (Chief of Staff, White, male, born 1972), who declined to intervene and suggested she file her own complaint if she believed she was being discriminated against.

23. On October 3, 2022, MAJ Lelah Dabner (Cherokee-Haitian, female, born 1969) informed Ms. Alston that she was being investigated for improper disclosure of personally identifiable information ("PII"). Ms. Alston denies any wrongdoing and believes the investigation was initiated in retaliation for her prior EEO activity and complaints against SSG Vicil-Deynes.

24. On March 3, 2023, COL Cortney Boyce (Second-Line Supervisor, Caucasian, female, born 1980; not in Ms. Alston's civilian rating chain) issued Ms. Alston a proposed 14-day suspension, citing discourteous conduct towards CPT Ha and the official performing a Security Spot Check, refusal to submit her time as directed, and failure to follow cybersecurity regulations by leaving her Common Access Card (CAC) unattended.

25. On March 28, 2023, COL Ronald Bahl (Brigade Commander, White, male, born 1972; no direct supervisory oversight) issued a Notice of Decision suspending Ms. Alston for 14 days effective April 9, 2023. Similarly situated employees were not disciplined as severely for comparable infractions and the investigation and discipline were retaliatory and discriminatory in nature.

26. Throughout the relevant period, Ms. Alston observed that other employees in similar roles, under the same supervisors, received more favorable treatment for similar or more serious infractions:

    a. **Staff Sergeant Cecilia Vicil-Deynes**: Colleague in the same section, supervised by Mr. Claudio and LTC Soto. Despite being involved in the August 12, 2022 incident and making age-related comments, she received only a verbal warning, while Ms. Alston received written counseling. SSG Vicil-Deynes was consistently included in group lunches and social events, and her complaints were promptly investigated and supported by supervisors.

6

  b. **Josue Ventura**: Hispanic, male colleague in the same section, supervised by Mr. Claudio. Mr. Ventura left his CAC unattended in the past but did not face any discipline, whereas Ms. Alston was suspended for a similar infraction. This demonstrates disparate treatment for employees with identical or nearly identical work situations and supervisors.

  c. **Marie Abernethy**: Hispanic, female colleague, over 40, in the same section. Ms. Abernethy defended herself verbally against being abused by another employee and faced no disciplinary action, while Ms. Alston's attempts to defend herself resulted in escalation to formal complaints and suspension.

27. In contrast other Black employees who reported discrimination were subjected to counseling and adverse actions by Mr. Claudio and other supervisors:

  a. **Isaac Ebron and Tawanda McQueen**: Black employees who, like Ms. Alston, reported discrimination and were subjected to counseling and adverse actions by Mr. Claudio and other supervisors. In contrast, Hispanic colleagues were not disciplined similarly for comparable conduct, indicating a pattern of disparate treatment based on race and protected activity.

28. Ms. Alston engaged in protected EEO activity by reporting discriminatory conduct and participating as a witness in EEO investigations.

29. Supervisors and management officials, including Mr. Claudio, LTC Soto, COL Van Giezen, and others, became aware of her protected activity during the relevant period.

30. Following this, Ms. Alston was subjected to investigations, written counseling, and suspension, in close temporal proximity to her EEO activity.

7

31. The Agency's actions exceeded the scope of the original complaints and included additional allegations that were not previously disclosed to Ms. Alston, further evidencing retaliatory motive.

32. The cumulative effect of exclusion, language barriers, differential discipline, and retaliatory investigations created a hostile work environment for Ms. Alston. She suffered financial hardship due to suspension, loss of leave, and emotional distress, including depression, anxiety, and physical symptoms. Ms. Alston was ostracized at work, labeled as a problem employee, and experienced ongoing fear and difficulty concentrating, all of which materially affected the terms and conditions of her employment.

## COUNT I
## VIOLATION OF TITLE VII - DISCRIMINATION BASED ON RACE, SEX, AND AGE

33. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs.

34. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Age Discrimination in Employment Act, 29 U.S.C. § 633(a), prohibit federal agencies from discriminating against employees on the basis of race, color, sex, and age.

35. The Supreme Court has established a three-part, burden-shifting framework for analyzing claims of discrimination under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

36. Under this framework, a plaintiff must first establish a prima facie case of discrimination, typically showing that (1) they are a member of a protected class; (2) they were qualified for the position; (3) they suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination, such as more favorable treatment of

similarly situated employees outside the protected class. *Id.*

37. Here, Ms. Alston is a Black, female employee over the age of 40, and thus a member of multiple protected classes. She was qualified for her position as a GS-12 Budget Analyst and performed her duties throughout her tenure. The adverse employment actions she suffered include: exclusion from workplace activities, written counseling, investigations, and a 14-day suspension.

38. The factual record demonstrates that similarly situated employees—such as Staff Sergeant Cecilia Vicil-Deynes, Josue Ventura, and Marie Abernethy—received more favorable treatment for comparable or more serious infractions, despite being subject to the same supervisors and disciplinary policies. Thus, giving rise to an inference of discrimination.

39. Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer articulates a legitimate, nondiscriminatory reason for its action, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

40. The evidence here demonstrates pretext: Ms. Alston was disciplined more severely than her comparators for similar conduct, and the Agency's explanations for its actions are undermined by the pattern of disparate treatment and the close temporal proximity to her protected activity.

41. The Supreme Court has recognized that discrimination may be established under a "mixed-motive" theory by showing that a protected characteristic was a motivating factor in the employer's decision, even if other factors also played a role. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45 (1989*); see also* 42 U.S.C. § 2000e-2(m).

42. The facts alleged support an inference that Ms. Alston's race, sex, and age were motivating factors in the adverse actions taken against her.

43. Defendants knew Plaintiff's race, age, and sex prior to the adverse actions and was aware, or should have been aware, of the discrimination she was subjected to.

44. Other employees who were similarly situated were treated more favorably than Plaintiff with regards to terms and conditions of employment and workplace conditions.

45. Plaintiff's race, age, and sex was a determining and motivating factor in Defendant's unlawful conduct.

46. The reasons proffered by Defendant for its unlawful conduct are pretextual.

47. Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

48. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race, sex, and age.

49. Defendant discriminated against Plaintiff by engaging in, tolerating, or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

50. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the scope of their employment, under theory of *Respondeat Superior*.

51. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical

expenses, and costs – and is entitled to all available legal and equitable remedies.

52. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

53. Defendants must comply with Title VII, but by and through their conduct, have violated Title VII.

## COUNT II
### VIOLATION OF TITLE VII - HOSTILE WORK ENVIRONMENT

54. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs.

55. To prevail on a hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment based on her protected status; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) there is a basis for imputing liability to the employer. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993). The conduct must be both objectively hostile or abusive and subjectively perceived as such by the plaintiff. *Id.* at 21–22.

56. Ms. Alston was subjected to repeated exclusion from workplace events, language barriers created by supervisors and colleagues speaking Spanish in her presence, ageist remarks, differential discipline, and retaliatory investigations.

57. These actions were unwelcome and based on her race, sex, and age. The conduct was severe and pervasive, resulting in emotional distress, financial hardship, and material changes to the terms and conditions of her employment.

58. In *Harris v. Forklift Systems, Inc.*, the Supreme Court held that workplace conduct violates Title VII when it is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

59. The standard is both objective and subjective: the conduct must be such that a reasonable person would find it hostile or abusive, and the plaintiff must in fact perceive it to be so. *Id.* at 21–22.

60. The cumulative effect of the exclusion, isolation, and differential treatment described meets this standard.

61. The Agency was aware of the conduct and failed to take effective remedial action, establishing a basis for employer liability.

62. The actions and conduct described herein would have detrimentally affected a reasonable person of the same protected classes in Plaintiff's position.

63. Defendants knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop these acts.

64. Defendants are directly liable for the discriminatory acts of their agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

65. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of harassment; failing to redress the discrimination and harassment of Plaintiff; by consciously failing to protect Plaintiff from discrimination and harassment; and by punishing Plaintiff for her

complaints of harassment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

66. Defendants' actions, and failure to act amounted to discrimination under Title VII.

67. This hostile work environment was so severe and pervasive that it interfered with Plaintiff's ability to perform her job, causing emotional distress and economic harm.

## COUNT III
## VIOLATION OF TITLE VII - RETALIATION FOR PROTECTED ACTIVITY

68. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs.

69. Title VII and the ADEA prohibit retaliation against employees who engage in protected activity, such as opposing discrimination or participating in EEO investigations. To establish retaliation, a plaintiff must show: (1) engagement in protected activity; (2) employer awareness of the activity; (3) a materially adverse action; and (4) a causal connection between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006). An action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68.

70. Ms. Alston engaged in protected activity by reporting discrimination and participating as a witness in EEO investigations. Supervisors and management officials were aware of her activity. She subsequently suffered adverse actions, including written counseling, investigations, and suspension, in close temporal proximity to her protected activity.

71. The escalation of discipline and the initiation of additional investigations following her EEO participation support a causal connection and an inference of retaliatory motive.

72. In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court held that an adverse action in the retaliation context is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

73. The actions taken against Ms. Alston—formal discipline, suspension, and workplace ostracism—meet this standard.

74. The record demonstrates a consistent pattern of disparate treatment between Ms. Alston and similarly situated employees. Staff Sergeant Cecilia Vicil-Deynes received only a verbal warning for ageist remarks, while Ms. Alston received written counseling for the same incident.

75. Josue Ventura was not disciplined for leaving his CAC unattended, while Ms. Alston was suspended for an identical infraction. Marie Abernethy faced no discipline for defending herself, while Ms. Alston's self-defense resulted in formal complaints and suspension.

76. Isaac Ebron and Tawanda McQueen, both Black employees, were also subjected to adverse actions after reporting discrimination, while Hispanic colleagues were not disciplined similarly.

77. This comparator evidence is specific as to roles, supervisors, and the nature of the infractions, thereby directly addressing the deficiencies identified in the prior administrative order. Such disparate treatment supports a finding of pretext under the *McDonnell Douglas* and *Burdine* frameworks, demonstrating that the Agency's proffered reasons for its actions are not worthy of credence.

78. The actions and conduct of Defendants created an intimidating, offensive, and hostile work environment based upon Plaintiff's protected class, and detrimentally affected Plaintiff.

79. The actions and conduct of Defendants were severe and pervasive and constituted discrimination based on Plaintiff's protected classes.

80. The actions and conduct described herein would have detrimentally affected a reasonable person of the same protected classes in Plaintiff's position.

81. Defendants knew or should have known of the harassment, discrimination, and disparate treatment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop these acts.

82. Defendants are directly liable for the discriminatory acts of their agents, servants, and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

83. By failing to conduct a prompt and thorough investigation of Plaintiff's allegations of harassment; failing to redress the discrimination and harassment of Plaintiff; by consciously failing to protect Plaintiff from discrimination and harassment; and by punishing Plaintiff for her complaints of harassment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

84. Defendants' actions, and failure to act amounted to discrimination under Title VII

85. This hostile work environment was so severe and pervasive that it interfered with Plaintiff's ability to perform her job, causing emotional distress and economic harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.  Enter a declaratory judgment finding that Defendants' actions violated Title VII;

B.  Enter a permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct;

C.  Award compensatory damages in the amount of $1,000,000 including:

   i. Lost wages and benefits;

   ii. Loss of promotional potential and career advancement;

   iii. Damage to professional reputation; and

   iv. Emotional distress

D.  Award punitive damages;

E.  Award attorneys' fees and costs; and

F.  Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 13, 2025

                                                Respectfully submitted,

_/s/ Dionna Maria Lewis_
Dionna Maria Lewis, Esq.
District Legal Group, PLLC
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
Stephen@DistrictLegalGroup.com
*Counsel for Plaintiff*